Mr. Justice Teacher
delivered the opinion of the court.
This is-an appeal from the superior court of chancery.
The object of the suit was to recover a legacy of five thousand dollars, bequeathed by David Alexander, a citizen and resident of the state of Louisiana, to his wife. It appears- that the tes *187 tator left, at the time of his death, a wife who has since intermarried with the appellant, Montgomery, and but one child by a former marriage, who is a citizen of this slate, and who has sinee intermarried with the appellee, Millikin. The will, by virtue of which the legacy is claimed, was made by the testator in the state of Kentucky, where he happened to be journeying at the time of his death.' The will was probated in the state of Kentucky, and in the county where the testator died, and was certified to the county of Adams in this state, whereupon letters of administration, with the will annexed, were granted to Samuel T. McAlister, one of the defendants to the bill; and it was likewise certified to the probate court of the parish of Concordia, in Louisiana, where it was admitted to record, and ordered to be executed by Thomas Alexander, as dative testamentary executor; the executor appointed by the will, William Alexander, being pronounced disqualified, by reason of not being a citizen of Louisiana. By the will, power and instructions were given to its executor, to sell the entire estate in Louisiana, of .the testator, which he owned in connexion with his wife and his brother Thomas; and likewise authority was given the executor, at his discretion, to sell the Mississippi property of the estate, which consisted of town lots in the city of Natchez. It appears that a sale has taken place of the Louisiana property, from the proceeds of which Millikin has received a portion, and the remainder has been secured to the separate use of his wife, by a deed of trust from Thomas Alexander to John P. Walworth, of Mississippi, who is one of the defendants to the bill. It further appears that McAlister, as administrator cum testamento annexo, effected a sale of the estate in Mississippi, and made his final settlement with the probate court, and surrendered his letters. The bill charged that Thomas Alexander has refused to pay the legacy claimed under the will, prays that McAlister may be decreed to pay whatever remains in his hands, that the remainder may be decreed to be paid by Millikin and wife, through the trustee Wal-worth, and for general relief.
The point raised in the chancery court, questioning its juris *188 diction in this case, was, we think, correctly decided by that court, as was also the point made upon the ground, that there was no legal proof of the existence and execution of the will, under which the appellants claim the legacy. The same, perhaps, may be said of the opinion of the chancellor, where he decides that the sale of the town lots in the city of Natchez, by McAlister, in his capacity of administrator, with the will annexed, was illegal and void, and the legacy not chargeable in the first resort upon a fund to be derived from their sale. Montgomery et ux. v. Milliken et ux. et al., 1 S. & M. Ch. R. 495. And the position, assumed in the argument in this court that McAlister, as administrator aforesaid, was improperly made a party to the suit, does not strike us with much force ; because the entire property of the estate having been brought into this state, it must all, to some extent, be affected by a decree allowing the legacy a validity commensurate with the spirit of the laws of Louisiana, let the legacy be paid out of what particular original fund it may be, as will be seen from the train of reasoning hereafter, and because by the rules of equity pleading, in all cases where a suit is instituted for the payment of a legacy the executor or administrator must be made a party, in order to enable a court of equity to do complete justice, and not by halves. Story’s Eq. Pl. 160, 161, 162.
The remaining question in this case, whether the legacy, as /given by the will, is valid under the laws of Louisiana, and to what extent, appears to us in a different light from that in which it has been received by the chancellor. After giving his instructions, in regard to the sale of all his property, the testator says : “ Out of my portion of the sale, I wish five thousand dollars to go to my wife Mary Ann.” In order to explain the reasons of our conclusions, it will be necessary to take a brief review of the civil law, upon the subject of testaments.
The civil law limits the amount of property which may be disposed of by testament. This limitation is in favor of the legitimate descendants, or failing those, the surviving parents of the testator, who are hence called forced heirs. The portion *189 of property which cannot be disposed of by testament, to the prejudice of the forced heirs, varies according to the number of such heirs, in a fixed ratio, and was anciently called the legi-time, as being derived ex lege. Any disposition by testament, which impairs the legitime, is so far inoperative. Upon the adoption of the Code Napoleon, the foregoing principles were declared to be law, and the amount of the legitime fixed, by its articles 913 and 915. These articles are copied almost literally, into the Louisiana Code. Art. 1480, 1481, 1482. Rogron, 190, 191. Sirey, 270, 273.
The surplus of the property of the deceased, after deducting from the mass of the succession or estate the debts due by the deceased and the legitime, (now called reserve,) constituted the disposable portion, (quotité disponible). The Code Napoleon, Art. 920, provides that bequests which exceed the disposable portion shall be reduced to it. Rogron, 192. Sirey, 275. The.Civil Code of Louisiana, art. 1489, enacts as law a similar provision.
Under the civil law as prevailing in France previously to the adoption of the code, as also under the code, a bequest which exceeded the disposable portion, could have effect only to the extent of that portion, and within that it would have full force, as the effect of the laws in relation to the legitime or reserve was only to reduce the excess of the bequest. As the law permitted a person to dispose of his property, at his pleasure, whether by donation inter vivos or by testament, excepting only the portion of the forced heirs, the only restraint imposed being that the disposition should not be for a purpose forbidden by law or contrary to good unorals, full effect was given to the will and intention of the testator; and if, in making a bequest, he exceeded the limits prescribed by law, it was presumed that he did so in ignorance of those limits, and that it was his intention to go as far in making the bequest as the law would permit. Thus the bequest which exceeded the disposable portion was to be reduced to its amount, and held to be valid so far. A declaration of such principles is found in the Louisiana Code, art. 1489. In the case of Austin et al. v. Palmer, 7 *190 Martin’s La. R., N. S. 21, the supreme court of Louisiana says, “ The disposable part [quantum] may be given, either directly or indirectly, and if a donation be of more than the disposable part, it is not therefore void, but reducible.” In the same volume, 262, Totin v. Case, that court says, “ The donation, causa mortis, of the whole estate of one who is forced heir is not void; the donation is good, but reducible.” These authorities seem to show that the fairly presumed intention of the testator should be carried into an effect, just as he himself, with a knowledge of the limitation prescribed by law, would have done. The civil law writers encourage this view of the subject. Domat on Testaments, tit. 1. sec. 6, art. 5, says, “ Since the laws permit testators to dispose of their goods by a testament, it follows that the will of the testator holds therein in the place of a law.” Again, the same author, on Testaments, tit. 1, sec. 7, art. 1, says, “ If the intention can be derived from the will, or by clear and certain consequences deduced from it, or even by conjecture, it is always by the knowledge that can be had thereof, that we are to decide the matter, by adjusting the difficulty in the manner that we judge the testator would have regulated it, and according to the views and sentiments which the will shows him to have entertained.”
'The Code Napoleon, containing no rules, and the civil code of Louisiana, arts. 1706 and 1708, but few, for the interpretation of doubtful expressions, or for the solution of difficulties which may be found in testaments, the rule of the civil law is to resort to those established in relation to contracts. The Code Napoleon, art. 1156, declares that in interpreting contracts, the mutual intention of the parties is to be sought after, sooner than to adhere to the mere literal phraseology of the language. The same principle is recognized in the Louisiana code, arts. 1945, 1946. Duranton, a civil law commentator, annotating the art. 1156 of the Code Napoleon, B. 5, 121, says, “ That if in contracts it may be allowed to go beyond the literal sense of the terms used, to inquire the intention, for a stronger reason is this true in testaments, which derive all their force from the intention of the testator.” So in the ff. *191 L. 101, it is said, “ In conditionibus testamentorum, voluntatem, potiusquam verba, consideran oportet.” The Code Napoleon, art. 1157, declares that “ where a clause is susceptible of two meanings, it must be understood in that of the one in which it can have an effect, and notin the sense in which it can have none.” The same principle is adopted in the Louisiana code, art. 1706, and it can also be found in the rules for interpreting bequests, collected in if. L. 109, de legatis. See also Rogron, 244, Sirey, 350. In the ff. 12, de rebus dubiis, it is said, “ Commodissi-mum est, id accipi, quo res, de qua agitur, magis valeat, quam pereat.” And, generally, in interpreting clauses which may conflict with the law and have no effect, and yet may afford proof of an intention on the part of the testator to do what the law does permit, such a construction should be given, which, under the law, would permit the execution of the bequest. The universal rule, as laid down in the ff. L. 192, De Reg. Jur. is, “ In re dubia, benigniorem inter pretationem sequi non mimes justius est quam tutius
The rule by which excessive bequests are to be reduced is expressly laid down in art. 1492 of the Louisiana code, and that article is a literal copy of art. 922 of the Code Napoleon. This rule gives an authority for maintaining a bequest, though it- exceed the limit fixed by law, upon its being' reduced within legitimate bounds. . ^
The immediately preceding remarks apply chiefly to- cases wherein the bequests may be excessive, by impairing the portion reserved to the forced heirs, and not generally to- cases where there is a legal restriction or disability on- the part of the legatee.
In the case now before us, it will be seen that a- very peculiar kind of disability might be supposed to affect the legatee under the will of David Alexander. Nevertheless, from the whole scope, tenor, and spirit of the civil law, from the opinions of the commentators upon that law, and from the decision of the civil law courts, it will likewise be manifest that the disability existing in the case of this legatee is not of that description contemplated- by the above exception-. It will be seen that *192 the disability has reference to the amount or value of the bequest, and does not include a restriction upon the mode and rules of interpreting and determining it. In support of this view, Domat on Testaments, tit. 1, sec. 7, art. 24, says: “ The rules which declare that testators cannot, by any clause in their testaments, exempt their dispositions from being subject to the law, nor order anything therein contrary to law, ought to be understood only of dispositions which some law had rendered illegal, and which should be contrary to the spirit of the law. If a disposition of a testator should derogate from the provision of any law, only in a case where the spirit of the law would not be transgressed, and upon a motive which the laws would not disapprove of, such sorts of dispositions would have nothing in them contrary to law, and therefore would subsist.”
The real character of the disability in this case is thus explained. The Louisiana code, art. 1745, -expressly disqualifies a second wife, the husband having children by a former marriage, from receiving a bequest of more than the share of a legitimate child, and which bequest shall in no case exceed the usufruct of one fifth of the estate of the husband. This provision is copied from the Napoleon Code, art. 1098, changing only the amount of property which may be bestowed, which change is derived from the Spanish laws. Sirey, 323. In annotating the French code, Rogron, 232, says, that the disposable part is thus diminished in favor of'the children of the first marriage, from an apprehension that the father or mother would too easily be induced, upon contracting a second marriage, to gratify the new spouse to the detriment of the children of the first marriage. This disability of the second wife is termed by the writers on the civil law “ one of the punishments of a second marriage.” It is called a penalty or a punishment on the second wife, because she cannot receive that portion of his estate which the husband could give, even to an utter stranger. It is a rule derived from the doctrines of the Roman Catholic church. Vide Domat, Pothier, Toullier, Duran ton, et al.
The Louisiana code, art. 1745, is restrictive on the power of *193 disposing, as limiting the disposable part, but is not prohibitory of the diposition. And the art. 1747, which provides that husbands and wives cannot give to each other, indirectly, beyond what is permitted by law, has been held by the supreme court of that state, (Casanova’s Heirs v. Acosta et al., 1 La. R. 179,) only to restrain the gift made indirectly to the amount specified in art. 1745 of that code, and that, if it exceeded that amount, it should be reduced. This decision is in accordance with the principles of the Roman law, as we find in Domat on Testaments, B. 4, t. 2, sec. 5, art. 3, commenting on the ff. L. 32, sec. 2, wherein it is said, that, “Since one may bequeath the usufruct of movable things, if a testator had bequeathed to his wife the usufruct of his house and of all things that should be found in it at the time of his death, excepting the gold and silver, and there were in said house merchant goods, in which the testator traded, and which he kept for sale, this usufruct would not comprehend these sort of things. For it would be restrained to that which should appear to be destined to be kept in the house. And so 'for the common rule of reduction, since we find it tstated in Domat, B. 4. tit. 2, sec. 3, art. 12, •— “ If a testator, having land in common with another, and devises the wJhole, without mentioning his part, the devise will have effect for the testator’s part, for it will be presumed that he meant to give the share that he had in the land.
From the above reasoning and examples, it seems safe to say that there is nothing really vindictive in the spirit of the law, affixing this disability upon the second wife. Such an inference would not be consistent with the spirit of the religion from which the doctrine of the disability originated. It is really designed only to insure that she receives no more of her husband’s estate than the amount the law contemplates, and to protect the children by the first marriage from a supposable loss. It was surely never designed as a repeal, in the respect of a second wife, of the general rules for the interpretation of testaments, or to exclude her from their benefit. Such a doctrine is hostile to the fundamental principle of the whole civil law, which is the essence of pure equity. It is said by Domat, *194 Prel. B. t. 1, sec. 2, art. 23, that “ If any case could happen that were not regulated by some express and written law, it would have for a law the natural principles of equity, which is the universal law that extends to everything. So it is expressed in the ff. L. 2, sec. 5, “ Hæc equitas suggerit, etsi jure deficiamur.
A decision of the court of Cassation of France, in a decree of January 4, 1814, quoted by the annotator of Domat, 2, 650, (iWis ed.TS35,) seems to fix the relation which the usufruct bears to property, and to establish a rule by which usufruct and absolute property are reciprocally convertible. The court said, “ that when the disposable part is one half in usufruct, the court can declare valid a legacy of one half in usufruct, and of an amount over and above it, if, in other respects, they permit the heirs to discharge themselves of the legacy by resigning to the legatee one fourth of the estate in absolute property, because one fourth in property is estimated to be equal to the one half in usu-fruct.” [“Loj'sque la quotité disponible est de moitié en u su fruit, les juges peuvent declarer valable un legs de moitié en usufruit, plus une autre valeur en sus, si d’ailleurs ils laissent aux héretiers la faculté de se libérer, au moyen de V abandon d'un quart en pro-prieté : ce quart en propriété est répwlé Véquiválent de la moitié en usufruit.”]
Upon a review of the whole investigation upon this branch of the case, it is strikingly manifest that the rules of equity are intended to be the governing principle in the interpretation of testaments. Law and equity require that the testament shall be maintained, if possible, regarding the will of the testator as sacred, and only to be disregarded when it may be against positive law. The derogation of law, in the present instance, by allowing the bequest to subsist in some shape, it has been shown, would not transgress the spirit of the law. The will must be permitted to have the effect of a bequest of one fifth of the succession in tisufruct, or it can have none. The latter, alternative is evidently against the meaning of the rules of interpreting testaments, for it cannot be supposed that the testator intended to make a fruitless bequest". Such a construction *195 is not to the prejudice of the forced heir, because by it the disposition of the testator is not extended, but, on the other haná, it is thereby reduced to the limit of the law and in favor of the heir. It is not making a will for the testator, since he clearly intended to bequeath as much as the law would allow him to do, provided the legacy is equal to the disposable portion. It is not changing the bequest in its nature, because property in usufruct and property absolute are reciprocally convertible by law. This was a bequest of money, which is but a representative of value, or of property, or of a right growing out of, or to be exercised upon, property. The whole estate, having been inventoried and appraised in money, which is the index of value, the bequest bears a fixed proportion to the estate. It is found to be too large. Let it be reduced, and the reduction reaches only to the value of the bequest, not to the bequest itself.
The decision of the supreme court of Louisiana, in the case of Leblanc v. Landry, 7 La. R., N. S., 665, and referred to by the chancellor, in his opinion in this case, is to the effect, that if a woman marry a second time, haviug children by the first marriage, she cannot inherit, in full property, from them, in case of the decease of any. The survivor or survivors are heirs. But if they and their forced heirs 'die before the mother, the property so inherited by them will go to her in preference to the heirs of the forced heirs. We do not see that this decision affects the rule of interpretation of testaments, as above insisted by this court.
There is left now but a matter of fact to be ascertained, since we are disposed to give to the bequest a validity of at least the usufruct of one fifth of the estate, provided the sum of five thousand dollars be not less in value than the usufruct of one fifth of the whole estate. This will be ascertained by the rule observed where usufruct and absolute property are marshalled, which is, to consider the usufruct of the whole to be only equal to the right of property of one half, and in that ratio. Civ. Code, arts. 1739 — 1745. The laws of Louisiana permit a bequest, under the circumstances, of the usufruct of one fifth of *196 the whole estate. The sum of five thousand dollars in absolute property is equal to the usufruct of the Sum of ten thousand dollars. The testator has willed an absolute property of five thousand dollars. The clear intention of the testator therefore was, that his wife should have that amount out of his estate, and inasmuch as she cannot by law hold the absolute property in the sum bequeathed, and cannot receive at most but the usufruct of one fifth of his estate, in order to give her an equivalent for the absolute sum bequeathed, she would be entitled to the usufruct of ten thousand dollars, provided that sum did not exceed one fifth of the estate, and in that ratio as the estate may be found to be in value. Under the will, the usufruct of ten thousand dollars is the maximum of the amount she can receive, however large the estate may be, and its minimum is the usufruct of one fifth of the estate, however small it may be. The legacy is payable out of the fund proceeding from the Louisiana property, and is entitled to claim interest according to what the fund arising from the sale of the Louisiana property has produced in the hands of the heir or her representatives.
The decree of the chancellor is reversed, 'and the cause remanded for further proceedings, in accordance with this opinion.
After the delivery of the foregoing, the appellees applied for a re-argument, which was granted them. The case accordingly was again argued and submitted, and at a subsequent day of the term
Judge Thachek
delivered the following opinion.
A careful re-examination of this case has not induced any change in the principles of the first decision made by this court.
The chief point decided in our former opinion was, that the widow is entitled to the usufruct of such sum as would be equivalent to five thousand dollars in fee, provided that usu-fruct do not exceed a fifth part of the estate. In order to arrive at this point, it was necessary, first, to determine whether property in fee and property in usufruct have such rela *197 tive value as would enable us to determine whether the bequest in fee exceed the value in usufi uct limited by law.
In addition to the reasons offered for the rule of convertibility, as laid down in the previous opinion in this case, the article 1739 of the civil code, it will be seen, constructively recognizes the proposition which we think approximates between property in usufruct and in fee, by using a tenth part of an estate in full property and its fifth part in usufruct alternatively. Possibly a more accurate estimate could be made by means of the principles employed by life assurance companies in calculating annuities, but, for the present purpose, this court is not called upon to make that calculation. The legacy is to be maintained, after having been converted into the kind of title which the legatee can take, and reduced within the limit of the law. These necessary estimates, as well as the value of the estate, which will afford the criterion of the legacy, are most properly matter for the chancery court and its commissioners.